**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MISSOURI**

**EASTERN DIVISION**

Marquita Lynnette Weber,
Plaintiff,

Case No. ___________________

v.

United States Department of Education, and Linda McMahon, in her official capacity as Secretary of Education,
Defendants.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Nature of the action**

1. The Public Service Loan Forgiveness program requires the Department of Education to cancel the remaining balance on a borrower's Direct Loans once the borrower has made 120 qualifying monthly payments while working full time in public service. 20 U.S.C. § 1087e(m). Marquita Weber worked in Missouri public schools for more than 30 years and met these requirements no later than December 2023. The Department has not cancelled her loans. It appears to have miscounted her qualifying payments by failing to credit any month before August 2012.

2. For nearly three years, Weber has been asking the Department to correct its count. The Department has neither cancelled her loans nor finally decided her

requests. She asks the Court to compel the cancellation the Department has unlawfully withheld. 5 U.S.C. § 706(1). In the alternative, she asks the Court to set aside the Department's determination of her count under § 706(2)(A), or to compel a decision on her applications for forgiveness and her pending requests under § 706(1).

**Parties, jurisdiction, and venue**

3. Plaintiff Marquita Lynnette Weber resides in St. Peters, Saint Charles County, Missouri, within this District's Eastern Division. She is the borrower on the Direct Consolidation Loan at issue.

4. Defendant United States Department of Education administers the Direct Loan and Public Service Loan Forgiveness programs and holds Weber's loan. Federal Student Aid (FSA), a component of the Department, issued the correspondence and count notices described below. MOHELA services the loan for the Department. Defendant Linda McMahon is the Secretary of Education and is sued in her official capacity as the officer responsible for administering those programs and for complying with any decree in this action. 5 U.S.C. § 702. This complaint refers to the defendants together as "the Department."

5. This Court has jurisdiction under 28 U.S.C. § 1331. The Administrative Procedure Act (APA), 5 U.S.C. §§ 702, 704, and 706, supplies the cause of action and waiver of sovereign immunity for the nonmonetary relief sought. Weber also seeks declaratory relief under 28 U.S.C. §§ 2201–2202.

6. Venue is proper under 28 U.S.C. § 1391(e)(1)(C) because Weber resides in this District, the defendants are a federal agency and an officer of the United States

sued in her official capacity, and no real property is involved. Assignment to the Eastern Division is proper under 28 U.S.C. § 105(a)(1) and E.D. Mo. L.R. 2.07.

7. Weber has no other adequate remedy in a court for the Department's failure to cancel her loan or to decide her request.

**Statutory and regulatory framework**

8. The Secretary of Education "shall cancel the balance of interest and principal due" on an eligible Direct Loan that is not in default for a borrower who has made 120 monthly payments on the loan after October 1, 2007, under qualifying repayment plans; who was employed in a public service job during the period in which the borrower made each of those payments; and who is employed in a public service job at the time of forgiveness. 20 U.S.C. § 1087e(m)(1). A "public service job" includes a full-time job in government or public education. Id. § 1087e(m)(3)(B).

9. Under the Department's regulation, a borrower may obtain forgiveness if the borrower is not in default, has made the equivalent of 120 qualifying monthly payments after October 1, 2007, and was employed full time by a qualifying employer when the borrower satisfied the 120 payments and when the borrower applied for forgiveness. 34 C.F.R. § 685.219(c)(1). The Department "forgives a loan under this section without an application from the borrower if the Secretary has sufficient information in the Secretary's possession to determine the borrower has satisfied the requirements for forgiveness." Id. § 685.219(f).

10. When a borrower consolidates, the Department credits the new consolidation loan with the weighted average of the qualifying payments the borrower made on the loans consolidated. Id. § 685.219(c)(3).

11. A borrower may request forgiveness by filing an application approved by the Department. Id. § 685.219(e)(1). The Department's approved form is titled "Public Service Loan Forgiveness (PSLF) & Temporary Expanded PSLF (TEPSLF) Certification & Application." The version Weber signed for Hazelwood in August 2026 asks the Department to "consider this form an application for loan forgiveness" and, if the borrower does not yet qualify, to "determine how many qualifying payments" the borrower has made. That version tells the borrower that, if the borrower is not yet eligible, the borrower "will be notified of the determination, why it was made, and how many qualifying payments" the borrower has made. U.S. Department of Education, PSLF & TEPSLF Certification & Application, OMB No. 1845-0110, expiration December 31, 2026, § 2.

12. When the Department determines that a borrower does not meet the requirements for forgiveness, it must notify the borrower that the application has been denied and provide the basis for the denial. 34 C.F.R. § 685.219(e)(8). The borrower may then ask the Department to reconsider whether any payment meets the requirements for credit toward forgiveness. Id. § 685.219(g)(1). The Department must notify the borrower of its reconsideration decision "and the reason for the Secretary's determination." Id. § 685.219(g)(3).

13. In 2022, the Department announced a one-time account adjustment to borrowers' payment counts. Under the adjustment, the Department credited toward Public Service Loan Forgiveness months a borrower spent in repayment status and months a borrower spent in forbearance lasting at least 12 consecutive

months or 36 cumulative months, when the borrower also had qualifying employment in those months. U.S. Department of Education, Fact Sheet: Charting the Path Forward for Public Service Loan Forgiveness, pp. 1–2 (Oct. 2022); Federal Student Aid, One-Time IDR Account Adjustment, 2022 FSA Training Conference Session BO14, slides 4, 7–8.

## Factual allegations

### Weber worked full time in public education for more than 30 years

14. Weber worked in a public service job, as a full-time employee of the Riverview Gardens School District from August 31, 1998 through November 5, 2010, and of the Hazelwood School District from November 17, 2010 through January 1, 2024. Both districts certified to the Department that she worked 40 hours per week during those periods. Before 1998 she worked for the Normandy School District, and the Department has approved her qualifying employment from August 25, 1993.

15. Weber retired as an assistant principal on January 1, 2024.

### Weber's loans have been Direct Loans in good standing throughout

16. Weber's student loans were consolidated into a Direct Consolidation Loan disbursed on March 8, 1999.

17. On August 23, 2022, after her servicer advised her to consolidate to benefit from the limited PSLF waiver, Weber consolidated that loan into a new Direct Consolidation Loan. The Department holds the new loan in subsidized and unsubsidized components.

18. None of Weber's loans has ever been in default.

**Weber's payment history records payments from 1999 through May 16, 2011**

19. The Department's servicer, MOHELA, keeps a payment history for Weber's 1999 consolidation loan. It records payments on that loan from April 1999 through May 16, 2011, each applied to interest, principal, or both.

20. Between October 2007 and April 2011, the payment history records payments in 37 of the 43 months, generally between $152 and $210 a month.

21. Weber's available credit union statements corroborate the servicer's payment history by showing student-loan withdrawals in corresponding amounts, with bank posting dates sometimes differing from the servicer's dates. From August 2010, the statements identify the payee as "DLSS WEB," the Department's Direct Loan Servicing System.

22. The Department's records nonetheless show the 1999 loan in administrative forbearance from July 29, 2006 through May 15, 2011. MOHELA's payment history shows no forbearance during that period.

23. In the summer of 2011, Weber returned to school for an education specialist degree, which she completed in August 2012. The Department's records show an in-school deferment from May 16, 2011 through August 4, 2012. Her bank statement records a $210 payment on May 16, 2011, which the payment history identifies as her last payment before the later payment gap.

**The Department excludes every month before August 2012**

24. The Department's August 30, 2026 count notice reports 116 qualifying payments on each component of Weber's loan and outstanding balances totaling $62,980.24.

25. The Department's payment history for Weber credits qualifying payments from August 2012 through August 2017, December 2018 through May 2019, and December 2019 through December 2023. The Department thus credits her with qualifying payments through the last month before she retired.

26. The Department has not credited any month from October 2007 through April 2011, including the 37 months in which Weber made a payment while employed full time by Riverview Gardens or Hazelwood.

**Crediting the months she paid brings Weber to 120 payments by December 2023**

27. Every excluded month precedes the months the Department already credits. Crediting any four of the 37 months in which Weber made a payment gives her 120 qualifying payments no later than December 2023. Crediting all 37 places her 120th qualifying payment in March 2021.

28. On information and belief, the months in which Weber made payments between October 2007 and April 2011 are qualifying payments, and the months of administrative forbearance in that period also qualify under the account adjustment. Weber made 120 qualifying payments while employed full time by a public school district no later than December 2023.

**Weber applied for forgiveness while she was still working**

29. While employed by Hazelwood, Weber submitted PSLF forms that the Department received on August 9, 2022, August 18, 2022, October 2, 2022, January 10, 2023, and June 20, 2023. On October 14, 2023, the Department marked four of her PSLF forms, for Hazelwood and Riverview Gardens, completed.

30. The PSLF forms Weber signed on August 3 and August 4, 2022 were the Department's "Certification & Application" forms. Section 2 requested a determination whether she qualified for PSLF or TEPSLF and discharge of qualifying loans, or a determination of her qualifying payments if none qualified. On each form, she selected the request for payment-count or employer-qualification review and did not select the statement that she believed she qualified for forgiveness immediately.

31. The Department's records for Weber list her "Loan Forgiveness and Discharge: PSLF" requests as "In Progress," last updated September 27, 2022 and October 14, 2023. The Department processed employment certifications and issued payment-count notices, but Weber has received no decision addressing her submitted pre-August-2012 historical-credit dispute or explaining the exclusions.

**Weber disputed her count while she was still working, and the Department promised a review**

32. Weber disputed missing payment credit while employed full time by Hazelwood before October 2023. On June 7, 2023, she emailed MOHELA payment records for 2009 through 2011. MOHELA's Customer Advocacy Team acknowledged her correspondence on July 26, August 11, and September 7, 2023 and said it was researching her concerns. On July 20, 2023, FSA responded in case 14611297

that she had 105 qualifying payments and that MOHELA could not adjust payment eligibility under the limited PSLF waiver or IDR account adjustment without FSA review and approval. That response did not determine which disputed historical months qualified or explain their exclusion. On October 2, 2023, Weber again disputed her PSLF count with FSA, which opened case 16089188. On November 1, 2023, FSA confirmed that the dispute was open. Weber replied that day, asked about her supporting payment information, and told FSA that she was approaching retirement.

33. Weber uploaded her bank statements to case 16089188 on October 30 and November 1, 2023.

34. By April 2024, FSA had written to Weber in case 16089188 that her qualifying employment had been approved through August 28, 2023; that the National Student Loan Data System lacked her payment history before February 13, 2012; and that records before that date "will be reviewed as part of the One-Time Income Driven Repayment (IDR) Adjustment," with the updated count to appear at "the end of 2023, early 2024."

35. On April 29, 2024, in a separate case, FSA told Weber that her loan history "will be reviewed" and that it would notify MOHELA of any updates. Case 16089188 remains "In Review."

36. The Department has not credited any month before August 2012. FSA's July 20, 2023 response described the need for FSA review and approval before MOHELA could adjust payment eligibility. FSA later told Weber that its records lacked her

payment history before February 13, 2012 and would be reviewed. Neither response explained why the particular historical months were excluded or resolved her dispute about their qualifying treatment.

**Weber has pursued her request since**

37. Weber renewed her request in April and December 2024. In April 2024, she told FSA that she had submitted bank statements and employment certifications. In December 2024, she identified missing credit from October 2007 through 2010.

38. On or about January 28, 2025, Weber submitted to FSA a request for reconsideration of her qualifying-payment count. FSA designated the request case 26733051.

39. FSA has treated Weber's submissions about her count as requests for reconsideration, acknowledging them as "Public Service Loan Forgiveness (PSLF) and Temporary Expanded PSLF (TEPSLF) Reconsideration" requests. On January 22, 2026, FSA confirmed that it was reviewing her request under case 31989013.

40. On June 2, 2026, FSA told Weber that her reconsideration request, case 26733051, was being evaluated, and it described a 45-business-day review period. That period ended in early August 2026. The Department has not notified Weber of a decision.

**The Department's notices report 116 payments without explanation**

41. On December 4, 2025, the Department reported 116 qualifying payments on each component of Weber's loan.

42. Weber submitted PSLF forms from both school districts again in November and December 2025, and again in August 2026. Each August form was the Department's "Certification & Application" form, on which Weber asked the Department to consider the form an application for loan forgiveness and, if she did not yet qualify, to determine her qualifying payments. FSA marked the Hazelwood form completed on August 20 and the Riverview Gardens form completed on August 30. It issued a count notice on each date.

43. Both August notices reported 116 qualifying payments. Neither explained the exclusion of the months before August 2012 or stated a decision addressing Weber's submitted historical-credit dispute. Weber has received no decision addressing that dispute or explaining those exclusions.

44. The Department has not cancelled Weber's loan.

**Count I**
**Agency action unlawfully withheld: cancellation of Weber's loan**
**5 U.S.C. § 706(1)**

45. Weber incorporates paragraphs 1 through 44.

46. The Administrative Procedure Act authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

47. The Department was required to cancel Weber's outstanding loan obligations. Under 20 U.S.C. § 1087e(m)(1), the Department must cancel the balance due on the eligible Direct Loan of a borrower who meets the statute's requirements. Un-

der 34 C.F.R. § 685.219(f), the Department must forgive the loan without an application when it has sufficient information in its possession to determine that the borrower has met them.

48. Weber satisfied the requirements of section 1087e(m)(1) no later than December 2023, while she was employed full time in public education. While so employed, she applied for forgiveness, and on November 1, 2023, she asked the Department to correct her count. By then the Department had approved her qualifying employment through August 28, 2023, and had received her bank statements. On information and belief, the Department had sufficient information in its possession at that time, including its servicer's payment history, to determine that she had satisfied the statute's requirements.

49. The Department has not cancelled Weber's loan.

**Count II**
**Unlawful determination of qualifying payments**
**5 U.S.C. § 706(2)(A), pleaded in the alternative**

50. Weber incorporates paragraphs 1 through 44.

51. The Administrative Procedure Act authorizes a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

52. Under Federal Rule of Civil Procedure 8(d)(2), Weber pleads this count in the alternative, to the extent the Department contends that its August 2026 notices constitute a final determination of her qualifying payments and eligibility for forgiveness.

53. On that premise, the notices are final agency action under 5 U.S.C. § 704.

54. The August 2026 determination is not in accordance with law. In issuing it, the Department failed to credit qualifying payments Weber made while employed in a public service job, in contravention of 20 U.S.C. § 1087e(m)(1) and 34 C.F.R. § 685.219(c). To the extent the determination serves as a denial of the forgiveness Weber applied for, it also fails to provide the basis for the denial required by 34 C.F.R. § 685.219(e)(8) and the brief statement of grounds required by 5 U.S.C. § 555(e).

55. The August 2026 determination is also arbitrary and capricious. It excludes, without explanation, every month from October 2007 through April 2011, including 37 months in which Weber made a payment. It does not address the payments recorded in the Department's own servicer's payment history or the bank statements Weber submitted. It does not carry out the review of her pre-2012 records that FSA told her would be completed by early 2024. And it departs without explanation from the account adjustment the Department announced for borrowers' PSLF counts.

**Count III**
**Unreasonable delay in deciding Weber's applications and requests**
**5 U.S.C. § 706(1), pleaded in the alternative**

56. Weber incorporates paragraphs 1 through 44. Under Federal Rule of Civil Procedure 8(d)(2), she pleads this count in the alternative, to the extent the Department contends that it has not made a final determination of her qualifying payments or her eligibility for forgiveness.

57. The Department must conclude a matter presented to it within a reasonable time, 5 U.S.C. § 555(b), and must give prompt notice and a brief statement of the grounds when it denies a written request, id. § 555(e). When a borrower applies for forgiveness, the Department must decide whether she qualifies and, if she does not, notify her that the application has been denied and provide the basis for the denial. 34 C.F.R. § 685.219(e)(7)–(8). Deciding Weber's applications and her requests to correct her count is a discrete action the Department is required to take.

58. Weber's requests for "Loan Forgiveness and Discharge: PSLF" have been "In Progress" since 2022 and 2023, and her dispute, case 16089188, has been "In Review" since October 2, 2023. FSA told her the review of her pre-2012 records would be complete by early 2024. She has since renewed her request, including through reconsideration request 26733051, which she submitted in January 2025 and which FSA described in June 2026 as under evaluation. Although the Department processed employment certifications and issued payment-count notices, Weber has received no decision addressing her submitted pre-August-2012 historical-credit dispute or explaining the exclusions. Its delay is unreasonable, and it leaves Weber's claim to forgiveness unresolved while the Department reports balances of $62,980.24 against her.

**Prayer for relief**

WHEREFORE, Weber requests that the Court:

59. Declare that Weber made 120 qualifying payments while employed in a public service job no later than December 2023, and that the Department has unlawfully withheld cancellation of her loan under 5 U.S.C. § 706(1);

60. Order the Department to cancel the remaining balance of Weber's Direct Consolidation Loan within 60 days of the Court's order, or another reasonable period the Court sets;

61. Alternatively, set aside the Department's determination of Weber's qualifying payments to the extent it excludes the months before August 2012, without disturbing credit already awarded, and remand with instructions to redetermine her qualifying payments and eligibility for forgiveness within 60 days of the Court's order, or another reasonable period the Court sets;

62. Alternatively, order the Department to decide Weber's applications for forgiveness and her pending requests to correct her count, including case 16089188 and reconsideration request 26733051, within 60 days of the Court's order, or another reasonable period the Court sets, with a statement of reasons addressing the months before August 2012, and to implement any resulting credit or cancellation;

63. Retain jurisdiction to ensure compliance with the judgment; and

64. Grant such other nonmonetary relief as the Court deems just and proper.

Respectfully submitted,

/s/ Stanley Love Tate III
Stanley Love Tate III, 66564(MO)
Tate Esq LLC
222 S Meramec, Suite 202-1096
St. Louis, MO 63105
314-884-1886 o | 314-561-7036 f
tate@tateesq.com
Attorney for Plaintiff